## Case No. 2,968.

### COHN v. NATIONAL RUBBER CO.

[3 Ban. & A. 568;[1] 15 O. G. 829.]

Circuit Court, D. Rhode Island. Oct. 9, 1878.

PATENTS—LICENSOR AND LICENSEE — RIGHTS AND DUTIES.

1. Persons duly licensed by the owner of a patent may make, use and vend the patented product within the terms and conditions of their license without hindrance or interruption by the patentee, if they themselves comply with the terms and conditions of the license.

2. Licensees will not be permitted to put an end to the contract, or deny the validity of the patent, repudiate the title of their licensor, refuse to pay the stipulated royalty, and, when the validity of the patent is sustained, in spite of their hostilities, set up, as a defense to the charge of infringement, the prior license which they had wrongfully repudiated, and the terms and conditions of which they had refused to acknowledge and perform, upon the ground that the patent was inoperative, invalid and void.

3. Where the licensees repudiate the license, they may be treated by the owner of the patent, at his election, as infringers. He may have his remedy by suit upon the license, or he may treat the licensees in future as infringers of his exclusive rights under the patent.

[Cited in White v. Lee, 3 Fed. 224; Hammacher v. Wilson, 26 Fed. 240; Starling v. St. Paul Plow-Works, 32 Fed. 291; Heaton Peninsular Button-Fastener Co. v. Dick, 55 Fed. 26. Criticised in Seibert Cylinder Oil-Cup Co. v. Detroit Lubricator Co., 34 Fed. 221.]

[In equity. Bill by Leopold Cohn against the National Rubber Company to enjoin infringement of a patent, and for other relief.]

Charles B. Stoughton, for complainant.
Benjamin F. Thurston, for defendant.

CLIFFORD, Circuit Justice. Inventors whose inventions are secured by valid letters patent have the exclusive right, for the period allowed by law, to make, use and vend the thing patented, and by virtue of that right they may assign the patent, or license others to practise the invention. Persons duly licensed by the owner of the patent may make, use and vend the patented product, within the terms and conditions of their license, without hindrance or interruption by the patentee, if they themselves comply with those terms and conditions; but they cannot be permitted to put an end to the contract, or deny the validity of the patent, repudiate the

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

title of their licensor, refuse to pay the stipulated royalty, and, when the validity of the patent is sustained in spite of their hostility to the rights of the owner, set up successfully, as a defense to the charge of infringement, the prior license which they had wrongfully repudiated, and whose terms and conditions they had refused to acknowledge and perform, upon the ground that the patent was inoperative, invalid and void. Moody v. Taber [Case No. 9,747]; Brooks v. Stolley [Id. 1,962]; Neilson v. Fothergill, 1 Webst. Pat. Cas. 287.

Sufficient appears to show that letters patent, in due form, for a new and useful improvement in shoes, were granted to the complainant's assignor, and that the complainant, by certain mesne conveyances, acquired the title to, and became the owner of the same; that the original patent was duly surrendered and reissued to the complainant, and that the latter patent is in full force. Alleged improvements in shoes are quite too numerous to justify any attempt to describe such as preceded the one patented, nor does the patentee profess to do more than to describe his own improvement, as set forth in his specification. According to his description of the same, it consists in a shoe in which that part of the upper required to be spread open or turned down, to permit the insertion or extrication of the foot, is so constructed that the vamp, or front part thereof, shall overlap or overlay the quarter or rear portion of the same, and shall be connected together round about said quarter by the described fastener; that the vamp and quarters, or front and rear portions of the upper, are united by a seam extending from the sole of the shoe, at a point near the front of the heel, upward some distance, and from the point at which the vamp and quarter cease to be united, to the top of the upper. These parts overlie each other, the vamp, or front portion, being outside of, or on top of, the quarter, or rear portion of the shoe, which overlapped portions are durably united by a rivet at the proper point on each side of the shoe, so as to permit the insertion of the foot, and insure, at the same time, a proper retention of the shoe on the foot. Superadded to that is the statement that it has been found expedient to locate the points down to which the upper parts of the shoe can be opened out or turned over in a line or plane, passing through the point of the heel and the curve of the instep, as shown in the drawings, which also show a loop for pulling on the shoe, and a strap or buckle for fitting the same around the ankle. Representation is also made in the specification that the forward underlying edges of the quarters extend upward vertically from the point where the vamp and quarters are separable, while the back edges of the overlapping front part, or vamp, incline rearward as they ascend, or extend obliquely upward, making the lap great-

est at the upper part or top of the shoe, leaving the overlapping portion of the vamp to draw well down around the ankle.

Service was made, and the corporation respondents appeared and filed an answer, setting up certain defences to the effect following: 1. They admit that the original and reissued patents were issued, and that the complainant became the owner of the invention. 2. They admit the license, and that they are largely engaged in the manufacture and sale of rubber goods of all kinds, including four different kinds of rubber and cloth overshoes, designated by the names set forth in the answer. 3. They allege that they were the first to introduce rubber and cloth overshoes into public use, having the peculiarity of construction which resides in connecting the vamp with the hind quarter by a folding flap, which dispenses with an open seam and allows the foot to be easily inserted in the shoe, so as to prevent the admission of snow or water when the shoe is on the foot, and buckled. 4. That the manufacture of shoes containing that peculiarity is secured to the several persons named in the answer by the letters patent therein described, under all of which patents they hold the exclusive license. 5. They admit that they procured the license of the complainant, denominated "Exhibit A," and contend that they still have the right under it to practice the invention upon paying the stipulated royalty. 6. That the complainant licensed the company named in the answer to practice the invention in violation of the license and agreement they made with the respondents. 7. That the shoes they manufacture, called in the answer Monitor shoes, do not contain or embody the invention described in the reissued patent. 8. They deny that they have ever, since the date of the agreement referred to, manufactured or sold any shoes which contain or embody the patented invention, but allege that, if they have, they are ready and willing and offer to pay the stipulated royalty.

Questions admitted need not be discussed, which is all that need be said in respect to the reissue and ownership of the patent. Nor is there any substantial controversy in respect to the nature and character of the patented improvement. Beyond all doubt it consists of an improved shoe, in which the front or vamp overlaps the quarter or back portion of the upper on both sides, and has the overlapping portions of the vamp connected together around the quarter by a strap, buckle or thong, extending from one portion of the vamp, around the heel or ankle, to the vamp on the other side, thus fastening the two overlapping sides of the vamp securely together. Both sides admit the utility of the invention, and, inasmuch as the answer of the respondents does not deny that the complainant is the original and first inventor of the improvement, the prima facie presumption in that regard is sufficient to en-

title the complainant to a decree, unless the respondents have established some one or more of the defences set up in the answer. They admit that they procured a license of the complainant, as alleged in the bill of complaint, and the proofs show beyond all doubt that they have since repudiated it, and refused to comply with its terms and conditions. Licensees, if they fulfil the stipulations of their licenses, are entitled to practise the invention, within the terms and conditions of the instrument, to the extent of the authority conferred, without question or impediment by the owner of the patent. Doubt upon that subject cannot be entertained; but if they refuse to perform on their part, and repudiate the license, they may be treated by the owner of the patent, at his election, as infringers. He may have his remedy by suit upon the license, in case they have repudiated the license, or he may elect to treat them in future as infringers of his exclusive rights under the patent. Being infringers, they cannot set up the license in defence of a suit, any more than if they had never possessed any such authority. Curt. Pat. [3d Ed.] § 217; Brooks v. Stolley [supra]; Woodworth v. Weed [Case No. 18,022]; Woodworth v. Cook [Id. 18,011]; Crossley v. Dixon, 10 H. L. Cas. 304; Lawes v. Purser, 38 Eng. Law & Eq. 50; Cutler v. Bower, 11 Q. B. (N. S.) 986; Kinsman v. Parkhurst, 18 How. [59 U. S.] 293. Viewed in the light of the preceding authorities it is undoubted law, that the patentee may treat the license which he gave to the respondents as forfeited, and may proceed against the persons who held the license as infringers, just as if they never had any such license. Persons who had a license, and have repudiated it, stand in no better condition than persons who never had any such authority; nor will a license, after it has been repudiated by the holder, avail him to any extent as a defence in a suit for infringement.

Tested by these suggestions. It is clear that nothing remains to be considered, except the question of infringement. Much discussion of that question is quite unnecessary, as it is obvious, from comparison of the alleged infringing exhibit with the exhibit of the complainant, that the charge of infringement is fully sustained. Attempt is made in argument to show that the shoe manufactured by the respondents, called the Monitor shoe, does not infringe the patented improvement, but the court is entirely of a different opinion. Suffice it to say, without entering more into details, that the complainant is entitled to relief as prayed in the bill of complaint.

Decree in favor of complainant for an account, and for an injunction.